UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DONALD ELROY MILLER,

                         Petitioner,                    15-cv-471 (PKC)

        -against-                    MEMORANDUM
                                                        AND ORDER

COLONEL KENNETH DECKER, in his official
capacity as Administrator of the Orange County
Correctional Facility, CHRISTOPHER
SHANAHAN, in his official capacity as New
York Field Office Director for U.S. Immigration
and Customs Enforcement, JEH JOHNSON, in
his official capacity as Secretary of Homeland
Security, ERIC HOLDER, in his official capacity
as the Attorney General of the United States and
the U.S. DEPARTMENT OF HOMELAND
SECURITY,

                       Respondents.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Petitioner Donald Elroy Miller, who is not represented by counsel and is proceeding pro se, has filed a petition for a writ of habeas corpus, asserting that he is being unlawfully detained by U.S. Immigration and Customs Enforcement ("ICE") without an individualized bail hearing.  ICE has held Miller in detention since September 23, 2014, and removal proceedings against him are pending.  (See Gov't Return Ex. 2.)  Miller seeks a writ of habeas corpus ordering the respondents to hold a bail hearing, with the respondents having the burden to show that his ongoing detention is justified.

        Miller asserts that his detention is unlawful under section 236(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1226(c), because the Act provides that the Attorney General "shall take into custody" any alien who is deportable on the basis of certain

criminal convictions "when the alien is released . . . for the same offense." (Pet. ¶¶ 26-38.) According to Miller, because he was not immediately taken into custody when he was "released" by New York authorities in 2011, following his arrest for criminal possession of marijuana, his detention is unlawful. Miller separately contends that his detention violates the Fifth Amendment's guarantee of due process. (Pet. ¶¶ 39-43.)

For the reasons that will be explained, this Court concludes that section 236(c) authorizes Miller's detention, and that his detention without a bail hearing does not deprive him of due process of law. His petition is denied.

BACKGROUND

Miller is a citizen of the British Virgin Islands, and has been a lawful permanent resident of the United States since 1966, when he arrived to this country at the age of two. (Pet. ¶ 1; Gov't Return Ex. 1.) According to ICE records, Miller has been convicted of twenty-two crimes, including the following removable offenses: 1.) criminal possession of marijuana in the fifth degree on October 14, 2011; 2.) criminal sale of marijuana in the fourth degree on October 5, 2010; 3.) criminal possession of a controlled substance in the seventh degree (specifically, marijuana and crack cocaine) on May 21, 2010; 4.) criminal sale of marijuana in the fourth degree on January 26, 2009; 5.) assault in the third degree on April 16, 1999; 6.) endangering the welfare of a child on October 31, 1995; 7.) attempted robbery in the second degree, on May 31, 1985; and 8.) criminal sale of a controlled substance in the fifth degree (specifically, Phencyclidine, which is commonly known as PCP) on May 16, 1985. (Gov't Return Ex. 2.)

In his most recent removable offense, on October 14, 2011, Miller was convicted of criminal possession of marijuana in the fifth degree, in violation of New York Penal Law

§ 221.40.[1]  (Gov't Return Ex. 2.)  He was released by state authorities shortly thereafter.  (Pet. ¶ 3.)  ICE took Miller into custody on September 23, 2014, nearly three years after New York state authorities arrested and released him for his most recent removable offense.  (Pet. ¶ 2.)  At the commencement of removal proceedings, ICE issues a document captioned as a Notice to Appear, which sets forth the alleged basis for an alien's removal.  (Gov't Return Ex. 4.)  Miller's separate Notice of Custody Detention is signed and dated September 23, 2014, describes the nature of the proceedings against him, and sets forth the basis for his removal.  (Gov't Return Ex. 5.)  Both documents state that Miller is a citizen of the British Virgin Islands and a lawful permanent resident of the United States.  (Gov't Return Ex. 4, 5.)  They assert that Miller is subject to removal pursuant to sections 237(a)(2)(A), (B) and (E) of the INA, 8 U.S.C. § 1227(a).  (Gov't Return Ex. 4, 5.)

Miller is detained at the Orange County Correctional Facility in Goshen, New York, and his removal proceedings are pending in New York Immigration Court on Varick Street in Manhattan.  (Pet. ¶ 7.)  On December 19, 2014, Miller filed an administrative request for release from detention with ICE's New York field office.  (Pet. ¶ 16.)  ICE has not yet ruled on his request.  (Pet. ¶ 16.)

Miller's petition describes in detail his family connections to the United States, including two children who are U.S. citizens and three siblings who are U.S. citizens.  (Pet. ¶¶ 18-22.)  Miller states that at the time of his detention, he was performing freelance work for a moving company, and was helping to care for his physically ill brother.  (Pet. ¶¶ 20-21.)  He states that he suffers from depression and substance abuse, but is functional, and manages his depression through medication.  (Pet. ¶ 23.)

---

[1] Subsequently, on June 24, 2012, Miller pleaded guilty to a charge of disorderly conduct, but no party contends that this is a removable offense.  (Pet. ¶ 3 & n.1; Gov't Mem. at 3.)

JURISDICTION

This Court has subject matter jurisdiction to review the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(a) & (c).  Section 236(e) of the INA, 8 U.S.C. § 1226(e), provides in part that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review."  8 U.S.C. § 1226(e).  Johnson has not challenged the Attorney General's discretion, but instead contests the interpretation of "the statutory framework that permits his detention without bail."  Demore v. Kim, 538 U.S. 510, 517 (2003).  The Supreme Court has determined that section 1226(e) does not deprive district courts of jurisdiction to hear such a challenge.  Id. at 516-17.

Neither party has contested this Court's personal jurisdiction.  Venue is proper because "a substantial part of the events . . . giving rise to the claim occurred" within this District.  28 U.S.C. § 1391(e).

DISCUSSION.

I.      ICE'S DETENTION OF MILLER IS BASED ON A PERMISSIBLE
        INTERPRETATION OF SECTION 236(c) OF THE INA.

Miller contends that his ongoing detention without bail is contrary to section 236(c) of the INA, because ICE did not immediately take him into custody "when" he was "released" by New York authorities.  Section 236(c) reads in relevant part:

> (1) Custody
>
> The Attorney General shall take into custody any alien who . . .
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . .
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without

regard to whether the alien may be arrested or imprisoned again for
the same offense.

8 U.S.C. § 1226(c)(1).[2]  Detention without bail is mandatory under section 236(c), unless the Attorney General determines that an alien falls within a narrow witness-protection exception not applicable here.  8 U.S.C. § 1226(c)(2) ("The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to [18 U.S.C. § 3521] that release of the alien from custody is necessary" for witness-protection purposes).  By contrast, subsection (a) of the same statute provides that "an alien may be arrested and detained" pending a removal decision, and that the alien may be released on bond, "[e]xcept as provided in subsection (c) . . . ."  8 U.S.C. § 1226(a).  Subsection (c), and its mandatory detention requirement, function as a carve-out from the broader and more discretionary removal-and-detention regime of subsection (a).

Miller contends that section 236(c) authorizes his detention "only if ICE detains the individual on or around the time of his or her release from criminal custody for an offense enumerated in that section."  (Pet. ¶ 29.)  He cites decisions from this District and elsewhere that have concluded the same.  (Pet. ¶¶ 29-30.)

This Court has considered twice before the proper construction of section 236(c), and concluded that it does not limit mandatory detention to circumstances when ICE immediately detains an alien after release from criminal custody.  See Johnson v. Orsino, 942 F. Supp. 2d 396 (S.D.N.Y. 2013); Sulayao v. Shanahan, 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009).  Having reexamined the issue, the Court again reaches the same conclusion.

---

[2] Of relevance to Miller's petition, 8 U.S.C. § 1227(a)(2)(B) applies to "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana . . . ."  Section 1227(a)(2)(A)(iii) applies to "[a]ny alien who is convicted of an aggravated felony at any time after admission . . . ."

Neither the Supreme Court nor the Second Circuit has interpreted the phrase "when the alien is released . . . ."  However, the Board of Immigration Appeals ("BIA"), the agency delegated authority to interpret the INA, has concluded that section 236(c) applies to aliens who were not detained immediately following release from criminal custody.  See In re Rojas, 23 I & N Dec. 117 (BIA 2001).  Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), established a two-step analysis for determining whether an agency's interpretation of a statute is entitled to deference.  Id. at 842-43.  First, a court must determine whether a statute is ambiguous, because if the statute is unambiguous, Congress's intent is binding upon the court and the agency.  Id.  If the statute is ambiguous, the court proceeds to the second step of Chevron, and determines whether the agency's interpretation is reasonable.  Id. at 843.

In Johnson and Sulayao, this Court concluded that the phrase "when the alien is released" is ambiguous.  See 942 F. Supp. 2d at 402; 2009 WL 3003188, at *3-5.  As discussed in Sulayao:

> This ambiguity results from the interaction of its two constituent paragraphs.  Section 1226(c)(2) contains the phrase, "an alien described in paragraph (1)."  Section 1226(c)(1), requires the Attorney General to take into custody an alien described in sections 1226(c)(1)(A) through (D) "when the alien is released" from custody or incarceration.  There are two plausible interpretations to the phrase "an alien described in paragraph (1)" (contained in section 1226(c)(2)): (1) it refers only to the classes of aliens described in section 1226(c)(1)(A) through (D); or (2) it refers to the classes of aliens described in section 1226(c)(1)(A) through (D) who are taken into custody "when . . . released."  If the first, it would include aliens like petitioner, who fall within one of the classes of aliens described in sections 1226(c)(1)(A) through (D), but were not taken into custody immediately upon their release from incarceration.  If the second, it would exclude the petitioner, and individuals like him, from mandatory detention because they were not immediately detained upon their release.

Both interpretations are reasonable.

2009 WL 3003188, at *4.  Sulayao noted that judicial and definitional support exist both for interpreting the word "when" to require temporal immediacy, but also to mean "at or during the time that" the alien is released.  Id.  This Court recognized that other courts have disagreed, and have determined that section 236(c) unambiguously applies only if ICE detains an alien immediately upon release.  Id. at *5 (collecting cases); see also Cruz v. Shanahan, __ F. Supp. 3d __, 2015 WL 409225, at *5-6 (S.D.N.Y. Jan 30, 2015) (Caproni, J.) (disagreeing with Sulayao and concluding that the phrase "when the alien is released" is unambiguous, and provides for mandatory detention only when an alien is detained "immediately" after release from custody).

In light of its conclusion that the statute supports two valid but incompatible interpretations, this Court held that the BIA's interpretation of the statute, as set forth in Rojas, was entitled to deference under Chevron.  Sulayao, 2009 WL 3003188, at *5-7.  To resolve the statute's ambiguity, the BIA used four separate considerations to analyze section 236(c): (1) the ordinary meaning of the statute's language, though ambiguous, (2) the overall statutory context and goals, (3) the statute's predecessor provisions, and (4) practical considerations.  Rojas, 23 I & N Dec. at 121-24.  In Sulayao, this Court summarized Rojas as follows:

> First, examining the plain language of section 1226(c), the BIA determined that the phrase "an alien described in paragraph (1)" "seems . . . most appropriately to be a reference to an alien described by one of four subparagraphs, (A) through (D)" because "[t]he 'description' of the alien does not naturally appear to include any or all of the concluding clauses of paragraph (1) . . . ."  Id. at 121.  The BIA found that: "[the] 'when released' clause is no more a part of the description of an alien who is subject to detention than are the other concluding clauses . . . [which] simply make it plain that the duty to detain is not affected by the character of an alien's release from criminal incarceration or the possibility that an alien may be rearrested on criminal charges."  Id.

The BIA then examined Congress's intent in enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which contained section 1226(c).  It found that "Congress was frustrated with the ability of aliens, and particularly criminal aliens, to avoid deportation if they were not actually in [INS] custody when their proceedings were completed."  <u>Id.</u> at 122.  After reviewing several other parts of the INA, the BIA stated: "we discern that the statute as a whole is focused on the removal of criminal aliens in general, not just those coming into [INS] custody 'when . . . released' from criminal incarceration."  <u>Id.</u>

Turning to prior versions of the INA, the BIA found instructive former section 242(a)(2), as amended by certain enactments in 1990 and 1991.  That provision stated:

"(A) The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense).   Notwithstanding paragraph (1) or subsections (c) and (d) but subject to subparagraph (B), the Attorney General shall not release such felon from custody.

(B) The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings."

8 U.S.C. § 1252(a)(2) (1992).  The BIA found this provision helpful because the requirements of paragraph (B) applied to all aggravated felons, not just those that were taken into custody at the time of their release.  <u>Id.</u> at 123-24.

Finally, the BIA recognized that interpreting section 1226(c) to apply only to those aliens taken into custody immediately upon release would cause practical and analytical problems: "it is not clear where the line would be drawn under [the alien's] reading of the statute.  Would mandatory detention apply only if an alien were literally taken into custody 'immediately' upon release, or would there be a greater window of perhaps 1 minute, 1 hour, or 1 day?"  <u>Id.</u> at 124.

2009 WL 3003188, at *6.  The Court concluded that <u>Rojas</u> adopted a permissible interpretation of the statute, and was not arbitrary and capricious under <u>Chevron</u>.  <u>Id.</u> at *7.

This Court revisited the reasoning of <u>Sulayao</u> in <u>Johnson</u>, and noted that "a substantial number of courts have since reached a conclusion contrary to the Court's holding in that case."  942 F. Supp. 2d at 404 (collecting cases).  As summarized in <u>Johnson</u>, a "sizable minority" of courts had also reached the same conclusion <u>Sulayao</u>, however, including what was then the only decision by a United States Court of Appeals to address the issue, <u>Hosh v. Lucero</u>, 680 F.3d 375 (4th Cir. 2012).  942 F. Supp. 2d at 404-05.

Two additional courts of appeals have since weighed in on the mandatory detention provision of section 236(c).  In <u>Sylvain v. Attorney General of the United States</u>, 714 F.3d 150 (3d Cir. 2013), the Third Circuit held that section 236(c) does not limit mandatory detention to aliens immediately released from criminal custody.  <u>Sylvain</u> concluded that while many courts have focused on the "when . . . released" language, the statute also requires that authorities "<u>shall</u> take into custody any alien" who has committed a removable offense, and that the statute does not impose a deadline on such custody.  <u>Id.</u> at 157-58 (quoting 8 U.S.C. § 1226(c)(1) (emphasis added)).[3]  In <u>Sylvain</u>, the petitioner was taken into mandatory detention by ICE four years after his release by state authorities.  <u>Id.</u> at 153.  <u>Sylvain</u> observed: "The text does not explicitly remove [ICE's] authority if an alien has already left custody.  We are loath to interpret a deadline as a bar on authority after the time has passed . . . ."  <u>Id.</u> at 157.

---

[3] The Third Circuit declined to resolve whether the "when . . . released" language was ambiguous, observing instead that the phrase, and whether <u>Rojas</u> is entitled to <u>Chevron</u> deference, merely "lurk[ed] in the background" of its analysis.  <u>Id.</u> at 156-57.  In a departure from many other courts, the Third Circuit's analysis focused heavily on the statute's directive that ICE "shall" take the criminal alien into custody, and the absence of any statutory language that revokes ICE's authority to detain such a criminal alien.  <u>Id.</u> at 157-61.

The Third Circuit also emphasized the "important public interest" of enforcing mandatory detention against criminal aliens, and noted that Congress found that such individuals pose a heightened flight risk if released while deportation proceedings are pending.  Id. at 159.  "[T]he mandatory-detention statute is intended to protect only the public – detention is mandatory, no matter the perceived flight risk or danger."  Id.  To require detention to commence immediately after an alien was released from custody "would lead to an outcome contrary to the statute's design: a dangerous alien would be eligible for a hearing – which could lead to his release – merely because an official missed the deadline."  Id. at 160-61.  But the statute grants no such discretion, the exercise of which would "bestow[ ] a windfall upon dangerous criminals."  Id. at 161.  Sylvain therefore concluded that the text and purpose of the statute did not limit mandatory detention only to those aliens immediately released from authorities.  Id.

By contrast, Castaneda v. Souza, 769 F.3d 32, 41-44 (1st Cir. 2014), a now-vacated decision of the First Circuit, concluded that the "when . . . released" language required ICE to taken an alien into custody "within a reasonable period of time" after release.  Castaneda observed that "[w]hen the government has delayed several years before arresting an alien, the presumption of dangerousness and flight risk is eroded by the years in which the alien lived peaceably in the community."  Id. at 43.  It also discussed the "constitutional concerns" that arose when ICE imposed mandatory detention years after release: "Mandatory detention of individuals such as the petitioners appears arbitrary on its face."  Id. at 47-48.  However, the First Circuit has granted a petition for rehearing en banc and vacated the Castaneda panel's opinion.  See Order, Castaneda v. Souza, 13-1994 (1st Cir. Jan. 23, 2015).  It does not appear that the First Circuit has heard oral argument en banc as of this date.

In light of the foregoing, this Court adheres to its reasoning in <u>Sulayao</u> and <u>Johnson</u>. It respectfully disagrees with other courts that have held that section 236(c) is unambiguous, and that mandatory detention is permissible only when ICE detains an alien immediately or shortly after release from custody. Rather, the BIA's analysis in <u>Rojas</u> is a permissible agency interpretation of ambiguous statutory language, and is entitled to <u>Chevron</u> deference. Neither the facts of this case nor the still-developing caselaw about the mandatory detention statute warrant a departure from the Court's previous analysis.

To the extent that Miller seeks habeas relief based on ICE's alleged violation of section 236(c), the petition is denied.

II.     MILLER'S MANDATORY DETENTION IS CONSISTENT WITH THE
         FIFTH AMENDMENT'S GUARANTEE OF DUE PROCESS.

Miller separately contends that the Fifth Amendment's guarantee of due process has been violated by his mandatory detention. He contends that "when detention takes place at an arbitrary location and time, and years after an individual's release from criminal custody, there is no basis" to presume that detention is based on flight risk or danger to the community. (Pet. ¶ 41.) Miller contends that unless section 236(c) is limited to circumstances where an alien is immediately detained after release from criminal custody, "an individual may be detained – without notice and in a severe and extremely disruptive fashion (as in fact occurred when Petitioner was arrested at his home) – at any moment, months or years after release from custody." (Pet. ¶ 42.) He contends that his "detention has been unaccompanied by the procedural protections that such a significant deprivation of liberty requires, and therefore his continued detention violates due process." (Pet. ¶ 43.)

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993) (citation omitted).

This right applies to all aliens "whether their presence here is lawful, unlawful, temporary, or permanent." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." <u>Demore</u>, 538 U.S. at 523.

In support of his due process claim, <u>Miller</u>'s cites Justice Kennedy's concurrence in <u>Demore</u>. <u>Demore</u> rejected a facial challenge to the constitutionality of section 236(c), holding instead that "[d]etention during removal proceedings is a constitutionally permissible part of that process." <u>Id.</u> at 531. In his concurring opinion, Justice Kennedy observed that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." <u>Id.</u> at 532. The Third Circuit has stated that this would "necessarily be a fact-dependent inquiry that will vary depending on individual circumstances." <u>Diop v. ICE/Homeland Security</u>, 656 F.3d 221, 233 (3d Cir. 2011). It added that "at some point," an alien's detention without hearing would raise constitutional concerns, and that a hearing would then be necessary to determine the alien's flight risk and danger to the community. <u>Id.</u> The First Circuit's now-vacated opinion in <u>Castaneda</u> expanded on Justice Kennedy's concurrence, observing that "those who have resided in the community for years after release cannot reasonably be presumed either to be dangerous or flight risks. . . . Mandatory detention of such individuals years after release for such crimes raises serious constitutional questions." 769 F.3d at 47.

Notwithstanding the concerns raised in Justice Kennedy's concurrence, Miller's mandatory detention falls within the four corners of <u>Demore</u>'s holding. <u>Demore</u> emphasized that Congress enacted the mandatory detention provision in an attempt to manage the "unacceptable

rate of flight" among deportable criminal aliens.  538 U.S. at 517-20.  It emphasized Congress's broad, plenary power over immigration matters, including the authority to make rules "that would be unacceptable if applied to citizens."  Id. at 521-22.  "[T]he statutory provision at issue governs detention of deportable criminal aliens pending their removal proceedings.  Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  Id. at 527-28 (emphasis in original).

Miller contends that his mandatory detention is arbitrary because it commenced years after his release from criminal custody.  But Miller, who has been convicted of 22 crimes, including eight removable offenses, is in the category of persons covered by the text of section 236(c).  As discussed in Demore, the mandatory detention statute presumes that, as a class, criminal aliens present a heightened flight risk and a danger to the community during the pendency of removal proceedings.  As Miller is a criminal alien, his detention is consistent with the face of the statute and the holding of Demore, and therefore is not arbitrary and contrary to due process.

CONCLUSION

For the foregoing reasons, Miller's petition is DENIED.  The Clerk is directed to close the case and to enter judgment for the respondent.  The government is directed to send to the petitioner copies of all unreported decisions cited herein.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
         March 30, 2015

- 13 -